## DOZE v. SMITH.

(Circuit Court of Appeals, Eighth Circuit. August 19, 1895.)

No. 577.

PATENTS—VALIDITY AND INFRINGEMENT—EQUIVALENTS—WATERING TROUGHS.

The combination described in the fourth claim of the Campbell patent, No. 221,031, for an improvement in troughs for watering stock, if patentable at all, does not disclose invention of such a character as will entitle it to the benefit of the doctrine of equivalents; and it must be confined to the precise form described. 66 Fed. 327, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

This was a bill in equity by John E. Doze against Alpheus Smith for alleged infringement of a patent relating to troughs for watering stock. The circuit court dismissed the bill. 66 Fed. 327. Complainant appealed.

The subjoined drawing, to which reference is made in the opinion, is a longitudinal sectional view of an improved device for watering stock, for which letters patent of the United States, No. 221,031, were issued to John S. Campbell on October 28, 1879, under an application filed September 3, 1879. The case is sufficiently stated in the opinion.

A. B. Cummins (Carroll Wright, on the brief), for appellant.
C. W. Steele (Lewis Miles, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This was a suit to restrain the infringement of United States letters patent No. 221,031, that were

issued to John S. Campbell on October 28, 1879, and were subsequently assigned to J. E. Doze, the appellant, who was the complainant in the circuit court. The patent covers an alleged improvement in a watering trough for watering stock. The invention may be sufficiently described as follows: The inlet pipe, by means of which water is introduced into an ordinary watering trough, is provided with a float valve, marked "E" in the foregoing drawing, which operates in the customary way to open or close the inlet pipe to which it is attached when the water in the trough falls below or rises above a certain level. The valve mechanism, which is usually placed at about the center of the trough, is protected by an air chamber, marked "L" in the drawing, which consists of a square box seated upon the trough. The lower end of the box is left open. A removable cover, marked "M," is fitted within the box or air chamber so as to permit the box to be filled for a considerable distance from the top downward with sawdust or other suitable packing material, to prevent freezing. On both sides of the box last described, the top of the trough is covered closely for some distance with boards, marked "R, R," which are fitted in the top of the trough. These boards are termed by the inventor "horizontal partitions," and the function they are said to perform is to prevent air from entering beneath the bottom of the box into the air chamber in which the float valve is located. At both ends of the trough for a short distance the trough is left uncovered, so that stock can have access to the water. These uncovered portions of the trough, marked "G, G," in the drawing, are provided with a rim, and are termed "drinking caps." From the drinking caps to the top of the box which incloses the valve mechanism, boards, marked "N, N," are set on an incline, so as to permit the intervening space between said inclines and the so-termed "horizontal partitions" to be closely packed with sawdust or some other suitable packing substance. It seems to have been contemplated by the inventor that the drinking trough in question should be surrounded on all sides by a curb, and that the space between the curb and the sides of the trough should be packed with some suitable substance so as to guard against freezing. It will also be observed that besides the removable cover, M, the air chamber, or box which is seated on the trough, is provided with an exterior cover or cap, marked "P" in the drawing.

The device which is supposed to be an infringement of the claims of the above-described patent is a watering trough that was constructed by the defendant for use on his farm in the state of Iowa. The defendant's watering trough differs from the improved watering trough described in the Campbell patent chiefly in the following respects: The two sides of the box shown in the foregoing drawing, which forms the air chamber in which the valve mechanism is located, do not rest upon the upper edge of the trough, like the box described in the Campbell patent, but extend downward into the trough for some inches below the level of the water. These projecting sides of the box are of the same width as the trough, and are closely fitted into the trough, the result being that they form a "water seal," which effectually excludes the outer air from the valve

chamber. The defendant's watering trough is covered for some distance on both sides of the air chamber, but suitable drinking spaces are left at each end. It is so constructed that the entire trough, except the drinking spaces, may be covered with earth to prevent the water in the valve chamber from freezing.

It is contended in behalf of the appellant that the watering trough last described, which was constructed by the defendant, is an infringement of the second and fourth claims of the Campbell patent. The record shows, however, that on the hearing of the case in the circuit court the complainant did not contend that the second claim of the patent was infringed, but waived all the claims of his patent except the fourth. In view of that fact, he must be limited to the same claim in this court. The question for consideration, therefore, is whether the defendant's device is an infringement of the fourth claim of the Campbell patent. That claim is expressed in the following language:

"Fourth. In a device for watering stock, the combination, with a trough having a drinking cap fitted on its top, of valve feed mechanism and an open-bottom chamber located over the latter, together with a horizontal partition fitted in the top of the trough between said drinking cap and chamber, whereby air is prevented from entering the bottom of the latter, substantially as set forth."

It is noticeable at a glance that the device employed by the defendant to exclude the outer air from the air chamber in which the valve mechanism is located is quite different from that described in the Campbell patent. The defendant excludes the air by extending the sides of the box forming the air chamber below the level of the water in the trough, thus forming a water seal, whereas the patentee excludes the air by covering the top of the trough between the air chamber and the drinking caps with boards fitted closely in the top of the trough. It is doubtful, we think, whether the patentee ever contemplated forming a water seal for the purpose of excluding the outer air from the valve chamber. He says in his specification, and this is all that is said on that point: "Horizontal partitions, R, are fitted in the top of the trough, and extend from the inner end of each drinking cap to the chamber L. Said horizontal partitions, R, prevent air from entering beneath the bottom of the chamber L at its end between said chamber and the surface of the water in the trough." But whether the float valve was intended to be so adjusted as to maintain the water in the trough and in the water caps at a higher level than the bottom of these so-termed "horizontal partitions," R, R, so as to form a water seal for the valve chamber, is not stated. In view of the fact that the specification is silent on that point, we might very well conclude that the horizontal partitions were simply designed to cover the trough, and to support the exterior packing, and that the inventor had no well-defined purpose of making the horizontal covering of the trough serve as a water seal to exclude the outer air from the valve chamber. The appellant contends, however, that the so-termed "horizontal partitions" of the patented device and the projecting sides of the box forming the air chamber of the defendant's device perform the same function, in

that they both serve to exclude air from the valve chamber. It is accordingly insisted by the appellant that the projecting sides of the air chamber in the defendant's device are a mechanical equivalent for the horizontal partitions described in the Campbell patent, and that the fourth claim of the patent is therefore infringed. We should feel more disposed to sustain this contention if we were better satisfied that the fourth claim of the Campbell patent covers a combination which possesses patentable novelty. It is apparent from the description of the device heretofore given that all of the four elements mentioned in the fourth claim, to wit, the trough having a drinking cap, the valve feed mechanism, the open-bottom air chamber, and the horizontal partitions fitted in the top of the trough, are each individually old. The flushing boxes now generally in use in water-closets contain two of the most important elements of the combination described in the Campbell patent; namely, a box or trough to hold water, and a float valve to control the flow of water into the box from the inlet pipe. It certainly did not require the exercise of much inventive skill to add the other elements of the combination; namely, the open-bottom box to cover the valve mechanism and prevent freezing, and the horizontal partitions or covers set in the top of the trough between the air chamber and the drinking spaces at each end of the trough. While it is not necessary at the present time to decide that the conception of the combination covered by the fourth claim of the patent merely involved an exercise of ordinary mechanical skill, and that the device is for that reason destitute of patentable novelty, yet it is manifest, we think, that in a case of this kind the doctrine of mechanical equivalents cannot be invoked for the purpose of giving the claim greater scope. The patentee should be limited, we think, to the precise form of device which he has described and claimed. Entertaining these views, we agree with the circuit court in holding that, as the defendant does not make use of the horizontal partitions which form one of the integral elements of the patented combination, he is not guilty of an infringement. The decree of the circuit court is accordingly affirmed.